VIA ECF

The Honorable Georgette Castner, U.S.D.J.
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Room 2020
Trenton, New Jersey 08608

Re: *Protect Our Coast NJ et al v. United States of America et al*, Civil Action No. 3:25-cv-06890-GC-TJB

Dear Judge Castner:

I am writing at the direction of United States Magistrate Judge Tonianne J. Bongiovanni to reply to a recent letter by the Bracewell LLP law firm (Bracewell) disputing that service has been completed on Equinor ASA.[1]

Initially, it should be noted that while contesting service on behalf of Equinor ASA, Bracewell fails to enter an appearance for Equinor ASA and denies that it represents Equinor ASA, a strange paradox.  At this stage, it must be assumed that Bracewell LLP represents Equinor ASA and should be directed to move specially if it intends to dispute service.  It is improper for Bracewill to contest service for an entity it refuses to admit it represents. Equinor ASA's refusal to allow Bracewell to accept service (and its insistence that service must be through the lengthy and expensive Hague Convention) has had the effect of interfering with the Court's jurisdiction and delaying any resolution on plaintiffs' request for preliminary relief.

When the original complaint and moving papers on the proposed order to show cause were filed, the Court declined to set a briefing schedule until all parties were served.  Although this was achieved easily with respect to the government and the individual Empire Wind LLCs, Equinor ASA, the parent corporation, has refused to permit its long-time counsel, Bracewell LLP, to accept service, even while allowing Bracewell to accept service on behalf of the LLCs, all of which are wholly owned and controlled by Equinor.  Equinor ASA's insistence on service via the Hague Convention process is an obvious attempt to evade (and delay) service of process while Equinor continues to construct turbine platforms in the Atlantic Ocean off the coast of Long Island, preventing this Court from considering the application for preliminary relief in a timely fashion (before more harm arises to the inner coastal area in the New York Bight).

The issues arising here are relatively limited in scope.  It is undisputed that the summons, complaint, amended complaint and moving papers were served by the process server on the office location at 600 Washington Blvd., Stamford, CT.  The August 4, 2025 letter of David J. Ball, Esq., acknowledges that the papers were received at this location but disputes that service could be completed at such premises on the ground that "neither Equinor ASA nor the Kingdom

---

[1] Counsel regrets the length of this letter but it is necessary to illustrate the wide array of documentary evidence that demonstrates that service has been accomplished on Equinor ASA, either directly at the Stamford location or upon Equinor ASA's subsidiaries that are its alter egos.  Although this letter from plaintiffs' counsel is not under oath, it is based almost entirely on Equinor's own Empire Wind file and such documentation can be provided to the Court via a declaration of counsel.

of Norway have offices at the Stamford, Connecticut office building that houses Empire Wind." *See* ECF 43 at 1. Mr. Ball makes other, unsworn and unsubstantiated statements, none of which are accompanied by any statement of personal knowledge. Mr. Ball states, in part:

> "The Empire Wind entities are indirect, wholly owned subsidiaries of Equinor ASA and are not designated to accept service on its behalf. Further, there is no entity at Empire Wind's Stamford, Connecticut address authorized to accept service for Equinor ASA. The Stamford offices house Empire Wind and other U.S. companies that are subsidiaries of Equinor ASA such as Equinor Wind US LLC." *See* Letter dated August 4, 2025 (ECF 43) at 2.

An unsworn statement by counsel is not a proper basis on which a party can make any factual claim but is unsubstantiated hearsay. *Cf. Solomon Lieberman & Chevra Lomdei Torah v. Interstate Fire & Casualty Co.*, 768 F.2d 81, 83, 1985 U.S. App. LEXIS 20824, *6-7 I(3d Cir. 1985), citing *Proctor v. Sagamore Big Game Club*, 265 F.2d 196, 198-99 (3d Cir.), *cert. denied*, 361 U.S. 831, 80 S. Ct. 81, 4 L. Ed. 2d 73 (1959)("an unsworn, unsupported statement by counsel cannot be used to resolve an issue of fact."); *see also Trotman v. Grand Cent. P'ship*, 2007 U.S. Dist. LEXIS 74753, *3, 2007 WL 2847191(S.D. N.Y. 2007)(rejecting counsel's claim that he was told service was authorized on the ground that "Counsel's unsworn statement is, of course, rank hearsay and of no evidentiary value whatever.").

As in *Trotman*, Mr. Ball's letter is equally unsworn, is equally "hearsay" and is equally "of no evidentiary value." *Trotman, supra*. Without proffering a factual basis and in an unsworn statement, Mr. Ball makes the following claims in an effort to contest service (for a client he claims he does not represent):

— Equinor ASA has no office at the Stamford, Connecticut location;

— Only the "Empire Wind entities" are located at this site;

— The "Empire Wind entities" are "*indirect*, wholly owned subsidiaries of Equinor ASA" [emphasis added];

— The Empire Wind entities "are not designated to accept service on [Equinor ASA's] behalf";

— "[T]here is no entity at Empire Wind's Stamford, Connecticut address authorized to accept service for Equinor ASA"; and

— "The Stamford offices house Empire Wind and other U.S. companies that are subsidiaries of Equinor ASA such as Equinor Wind US LLC."

*See* Letter dated August 4, 2025 at 1-2 (ECF 43).

None of this is asserted under oath and Mr. Ball does not assert that he has personal knowledge of the facts. A puzzling footnote underscores Mr. Ball's inability to assert any facts as to

2

whether service on Equinor is complete. At n.4 of his August 4, 2025 letter, Mr. Ball states that he and his law firm have "not" been in communication with Equinor ASA for *any* purpose:

> "Bracewell LLP does not represent Equinor ASA *and has not communicated with Equinor ASA regarding potential representation (or otherwise)*." See <u>Letter dated August 4, 2025 (ECF 43)</u> at n. 4 [parenthetical text is Mr. Ball's][italics added].

Accepting this representation at face value, this would mean that neither Mr. Ball nor his law firm, Bracewell LLP, have had contact with Equinor ASA on *any* subject for *any* reason. If this is true, then on what basis can Mr. Ball make factual statements that Equinor ASA does not have an office or do business at the Stamford location?

In actuality, the claim that Bracewell LLP has had no contact with Equinor ASA is false. This is not to say that Mr. Ball made a knowingly false statement but he has apparently been misinformed. Bracewell LLP is currently representing Equinor ASA and is its public relations specialist. Only five weeks ago on July 8, 2025, Equinor ASA released a press statement on Equinor ASA's website, equinor.com, highlighting the dedication of a new service vessel for the Empire Wind project. The press release is headed "US-Built Service Operations Vessel ECO Liberty Launched to Support Equinor's Empire Wind Project" and makes reference to a media contact as follows:

> Sam Spiegleman, Strategic Communications Assistant, PRG
> 303-880-6328, Sam.Spiegleman@***bracewell.com***

*See* <u>Press release published on equinor.com</u> at https://www.equinor.com/news/us/20250708-service-operations-vessel-eco-liberty-launched [bold text and italics added].

As this plainly shows, the Bracewell LLP firm <u>is</u> representing Equinor ASA, *as of five weeks ago*, as a public relations specialist. Thus, it is not even true that Bracewell LLP has had no contact with Equinor ASA since the press release published on equinor.com makes it clear that Bracewell is currently conducting public relations activities for Equinor.[2]

Bracewell LLP has also been a long-standing counsel for Equinor ASA in connection with the Empire Wind project. In 2020, Bracewell was lead counsel for Equinor ASA in a proposed sale of 50% of its interest in Empire Wind to BP, as stated in Bracewell's September 14, 2020 press release (still on Bracewell's website). See https://www.bracewell.com/news-events/bracewell-represents-equinor-11-billion-sale-50-interest-two-us-offshore-wind-development/ purchase [last downloaded August 18, 2020]. There is no dispute that Bracewell was representing Equinor ASA in connection with the sale of an interest in Empire Wind. In fact, the Bracewell press release contains a link to a <u>Houston Business Journal</u> article dated September 18, 2020 in which Bracewell is described as representing "Equinor ASA" in the transaction. There can be no doubt about the accuracy of this information since Bracewell itself posted the link in the press release that it published on its own website.

---

[2] Sam Spiegleman is still employed by Bracewell LLP as his linked in page shows. https://www.linkedin.com/in/samspiegleman [last downloaded August 18, 2025].

In January 2022, Bracewell issued another press release stating that it represented "Equinor" in negotiating the purchase of ORECs from New York State for Empire Wind. The Bracewell LLP press release refers <u>only</u> to "Equinor" and not to any subsidiary or affiliate: "Bracewell Represents *Equinor* in Sale of Offshore Wind Renewable Energy Certificates" — one has to assume that a press release issued by a reputable law firm is true and reflects the reality of its representation. Moreover, the text of the press release identifies *only* Equinor, not any subsidiary or affiliate:

> "WASHINGTON, DC – Bracewell LLP ***represented Equinor*** in negotiating purchase and sales agreements and conditional grant agreements with the New York State Energy Research and Development Authority (NYSERDA) in support of major offshore wind projects. These agreements conclude the negotiations following NYSERDA's January 2021 ***selection of Equinor*** and bp to supply New York State with offshore wind power in one of the largest renewable energy procurements in the United States to date."

*See* <u>Press Release</u>, January 20, 2022, bracewell.com at <u>https://www.bracewell.com/news-events/bracewell-represents-equinor-sale-offshore-wind-renewable-energy-certificates-and-conditional/#:~:text=WASHINGTON, DC – Bracewell LLP represented,support the offshore wind industry</u> [last downloaded August 18, 2025][emphasis added].

As this shows, the unsworn statement proffered by Mr. Ball is incorrect and, in fact, Bracewell has had a long-standing relationship with Equinor in connection with Empire Wind. This explains why it was Bracewell — not some other law firm — that wrote to the Court to contest service (even as Bracewell denies any relationship with Equinor ASA).[3] Even today, Bracewell continues to publicize its long-standing work for Equinor, making no reference to any subsidiaries or so-called "Indirect" entities. Bracewell's website states that it represents —

"**Equinor**

- in its <u>$1.1 billion sale</u> of a 50 percent interest in two US offshore wind development projects to bp, including the formation of a partnership to develop and operate the Empire Wind project offshore New York and the Beacon Wind project offshore Massachusetts, which together could generate up to 4.4 GW

- in its 816-MW Empire Wind Offshore Wind Farm – the first large-scale offshore wind lease in New York State – <u>Projects Deal of the Year Finalist, 2020 IFLR United States Awards</u>." *See* <u>bracewell.com</u> at https://www.bracewell.com/practices/renewable-energy/wind/ [downloaded on August 18, 2025] [bold and underscore in original].

---

[3] It is not suggested that Mr. Ball or Ms. Navaro have made any intentionally misleading statements but it appears they are simply uniformed by their firm and by Equinor of the true nature of its relationship with Bracewell LLP.

In the face of these facts, it is clear that Bracewell LLP has been Equinor ASA's long-time counsel and the refusal of Equinor ASA to authorize Bracewell to accept service can only be seen as a device to force service through the lengthy and expensive Hague Convention process while Equinor continues to build its turbine structures, creating facts on the ground (in the ocean off Long Island), preventing this matter from timely coming before the court on preliminary application. This evasion of service is an attempt to evade the Court's jurisdiction.

In any event, service on Equinor ASA at the Stamford office has been accomplished and is valid and proper. Equinor ASA admits, on its website equinor.com, that it has a U.S. "location" at 600 Washington Blvd, Stamford, Connecticut, along with four (4) other U.S. sites. *See* Declaration of Bruce I. Afran at ¶¶15-17 (ECF 42). The website is owned by Equinor ASA and marked "Copyright 2025 Equinor ASA" on each page. *See* Declaration of Bruce I. Afran at ¶17 and Exhibit E. These facts are incontestable and, in themselves, provide a basis for confirming service on Equinor at 600 Washington Blvd., Stamford. Plaintiff's counsel also states, under oath, that the Stamford office answered "Equinor", without referring to any other company or subsidiary name, when answering the number that appears on the equinor.com website. *See* Declaration of Bruce I. Afran (ECF 42) at ¶18 and Exhibit E. Standing alone, these facts are sufficient to confirm service on Equinor ASA at the Stamford location.

In the alternative, plaintiffs are prepared to demonstrate that service was completed on Equinor ASA based on service of process on the "Empire" entities that are alter egos of Equinor ASA. The record is replete with such evidence.

In his August 4, 2025 letter, Mr. Ball acknowledges that Bracewell LLC consented to accept electronic service for the "Empire" entities that are named in the action as co-defendants: EMPIRE OFFSHORE WIND LLC, EMPIRE LEASEHOLDER LLC and EMPIRE WIND 2 LLC (the "Empire entities"). As shown below, because these entities are "alter egos" of Equinor ASA, service on Equinor ASA was achieved by service on its alter egos. [Plaintiffs are prepared to demonstrate such facts via a declaration under oath if Equinor ASA files a motion to contest service or if the Court directs plaintiffs to file a motion deeming service complete.]
As Mr. Ball acknowledges, where a corporation is an "alter ego" for another entity, service on the alter ego would confirm service on the principal, in this case Equinor ASA. *See* Letter of David Ball, Esq., August 4, 2025 at 2 *citing Canfield v. Statoil USA Onshore Props.*, 2017 U.S. Dist. LEXIS 40870, *36, 2017 WL 1078184 (M.D. Pa 2017).[4]

---

[4] I respectfully must note that Mr. Ball misconstrues the holding in *Canfield v. Statoil USA Onshore Props.*, 2017 U.S. Dist. LEXIS 40870, *36, 2017 WL 1078184 (U.S.D.C, Pa., 2017). *Canfield* did not hold that Equinor (or its predecessor Statoil) and its subsidiaries are not alter egos of one another. To the contrary, the court in *Canfield* held that service "could" have been valid on Statoil (now "Equinor") if the plaintiff had made a "plausible" case that the subsidiaries are "alter egos" of the parent, but it did not offer such evidence:

> Had Canfield [the plaintiff] asserted some plausible basis for the court to find that Statoil ASA was the alter ego of SOP [the subsidiary], the court would be more inclined to allow Canfield's claim to proceed at this stage. Service on a subsidiary is effective to complete service on a parent corporation where the subsidiary is the alter ego of the parent. However,

5

Unlike the decision in *Canfield* where no evidence was offered to establish that Equinor's subsidiaries were alter egos of the parent company, *see Canfield v. Statoil USA Onshore Props*., *supra*, 2017 U.S. Dist. LEXIS 40870 at *36; *see* n.3, *supra*, the record here is replete with evidence that the "Empire entities", i.e., the "Empire" LLC's that hold formal title to the offshore leases, are alter egos of Equinor ASA.

As a starting point, in the state and federal regulatory submissions for the Empire Wind project, the Empire entities **all** use the "Equinor" trademark and its red fan logo. These appear, ***without exception***, on the cover of **all** submitted documents, such as the several dozen documents in the Empire Wind "Construction and Operation Plan (COP)" filed with the Bureau of Ocean Energy Management (BOEM). *See* n.4, *below*. On the cover of each document appears the phrase "**Prepared *for* Equinor**" alongside the Equinor trademark and logo [italics added], not prepared for any subsidiary but *only* for the parent company. This is consistent in each and every Empire Wind filing, as the URL's below demonstrate.[5] [Similarly, in its New York State submissions, Empire Wind documents use the Equinor trademark on the cover of all plans and construction submissions; *see discussion*, *infra*.]

---

… Canfield has not asserted any facts, either in her complaint or her brief, to plausibly suggest that SOP was the alter ego of Statoil ASA. *Canfield*, 2017 U.S. Dist. LEXIS 40870 at *36 [citations omitted].

[5] Each document submitted to BOEM for the Empire Wind project bears a cover stating that the document is "Prepared by Equinor" along with the Equinor logo. *See generally* "Empire Wind Construction and Operations Plan (COP)" at https://www.boem.gov/renewable-energy/state-activities/empire-wind-construction-and-operations-plan (last downloaded August 15, 2025).

When each link on the BOEM webpage is opened for Empire Wind, it reveals the submission with the Equinor trademark and logo and the statement "***Prepared for Equinor***", making it clear that the Empire entities as Equinor's alter egos freely make use of the Equinor trademark. *See e.g.* https://www.boem.gov/sites/default/files/documents/renewable-energy/Public_EOW_COP_v7_Volume 1_Project Information Redacted.pdf (Construction and Operations Plan ("COP"), Volume 1, "Project Information"); https://www.boem.gov/sites/default/files/documents/renewable-energy/Public_EOW COP_v7_Volume 2b_Biological.pdf (COP, Volume 2, "Biological Resources"); https://www.boem.gov/sites/default/files/documents/renewable-energy/Public_EOW COP_v7_Volume 2c_Cultural.pdf (COP, Volume 3, "Cultural Resources"); https://www.boem.gov/sites/default/files/documents/renewable-energy/Public_EOW COP_v7_Volume 2d_Visual.pdf (COP, Volume 2d, "Visual Resources"); https://www.boem.gov/sites/default/files/documents/renewable-energy/Public_EOW COP_v7_Volume 2e_Social.pdf (COP, Volume 2e, "Social Resources"); https://www.boem.gov/sites/default/files/documents/renewable-energy/Public_EOW COP_v7_Volume 2f_Summary Measures.pdf (COP, Volume 2d, "Avoidance and Mitigation"). Every Appendix listed on the BOEM website also bears the statement "Prepared by Equinor" with the Equinor logo on the cover. *See generally* "Empire Wind Construction and Operations Plan (COP)" at https://www.boem.gov/renewable-energy/state-activities/empire-wind-construction-and-operations-plan (last downloaded August 15, 2025)

Although a separate website is maintained for the "Empire Wind" project, the site repeated states that it is "*Equinor*" that is the "developer" of Empire Wind, as for example the following:

> "Empire Wind is being built *by Equinor* a leading international energy company. *Equinor brings* more than 20 years of experience in offshore wind."*See* empirewind.com at https://www.empirewind.com/ew-1/ [italics added].

No mention is made of the experience or resources of any subsidiary. The Empire Wind website goes on to state that the lease for the projects ***is Equinor's lease*** and was "finalized" ***by Equinor***:

> "***Equinor*** finalized the federal lease for Empire Wind in March 2017. This came after the successful Department of the Interior's Bureau of Ocean Energy Management's (BOEM) auction in December 2016". *See* empirewind.com at https://www.empirewind.com/ew-1/ [emphasis added].

The Empire Wind website even admits that the "commercial lease" for the Empire Wind lease area "was signed ***by Equinor***":

> "The commercial lease for this federal offshore wind area ***was signed by Equinor*** in March 2017, following the Department of the Interior's Bureau of Ocean Energy Management's (BOEM) successful auction in December 2016."

*See* empirewind.com at https://www.empirewind.com/about/project/ at section headed "Project Timeline" [last downloaded 8/17/25] [emphasis added]. Significantly, even though the actual lease was signed in the name of an Equinor (then, Statoil) subsidiary, the empirewind.com website states that the lease "was signed ***by Equinor***", further highlighting the alter ego nature of the subsidiaries and their merger into the identify of the parent.

When Equinor announced its construction of a U.S.- built vessel to construct the project (a rare event in U.S. shipbuilding), the ship was described on the Empire Wind project website as having been built "to support ***Equinor's*** Empire Wind Project" and that "*Equinor"* is the "developer" of Empire Wind:

> "U.S.-Built Service Operations Vessel Eco Liberty Launched *to Support **Equinor's*** Empire Wind Project."

> "***Equinor, the developer of Empire Wind***, officially launched the Service Operations Vessel ECO Liberty on June 28 for deployment in its New York offshore wind project, marking the culmination of a major investment in the U.S. shipbuilding industry."

*See* empirewind.com, Press Release, dated June 30, 2025 at https://www.empirewind.com/2025/06/30/us-built-service-operations-vessel-eco-liberty-launched-to-support-equinors-empire-wind-project/ [italics and bold text added].

Similarly, when President Trump suspended the permit for Empire Wind in April 2025, the announcement on the Empire Wind website was that construction was halted by "***Equinor"***, **not**

by a subsidiary. The press release was headed: "*Equinor* Suspends offshore construction activities for the Empire Wind Project". *See* empirewind.com, Press Release, dated April 17, 2025 at https://www.empirewind.com/2025/04/17/equinor-suspends-offshore-construction-activities-for-the-empire-wind-project/ [emphasis added][6]

In its submissions to the New York State regulator, NYSERDA, the Empire Wind project is described as an "**Equinor**" project "developed" by Equinor and constructed and operated under "**Equinor's**" corporate standards. Along these lines, the Environmental Management and Construction Plan (EM&CP) submitted for Empire Wind to New York states:

> "***As Empire is an Equinor project, all project personnel must also abide by Equinor's project procedures*** as set forth in its company directives and guiding documents. Equinor has developed specific over-arching policies, plans, and procedures for Empire to foster compliance with Equinor's management system. ***Equinor maintains project-specific plans for quality and risk management, safety, and sustainability, which all project personnel are expected to follow*** in addition to this EM&CP."

*See* EM&CP at §3.2 "Project Procedures", found on NYSERDA's docket at https://documents.dps.ny.gov/public/MatterManagement/CaseMaster.aspx?MatterSeq=65825&MNO=21-T-0366 [emphasis added].[7]

The EM&CP also states that the Empire project will follow "Equinor's" "Quality and Risk Management Plan":

> "Equinor maintains a Quality and Risk Management Plan developed for EW1. This plan will be followed by Equinor and all its team members and Contractors .…"

*Id*. at §3.2.2 "Quality Control Plan". The New York State submission also states that "Equinor" maintains a health and safety plan *to be followed by Empire Wind*:

> "*Equinor* maintains a specific corporate-level Safety and Sustainability Plan *developed for Empire*." *Id*. at §3.2.4.

It is clear from this language that Equinor is in direct control of Empire Wind, requires that Empire Wind comply with Equinor's internal procedures and safety protocols and that defendants are, in reality, a single entity operating the Empire Wind project and are alter egos of

---

[6] By way of further example, the Empire Wind website section headed "About Us" opens with the statement that "*Equinor* is developing Empire Wind 1 & 2 offshore New York," again no reference to a subsidiary. *See* empirewind.com at "About Us"; https://www.empirewind.com/about/project/ [last downloaded 8/17/25].

[7] Plaintiffs are prepared to supply copies of documents referenced in this letter if requested by the Court or as a part of any motion or motion response addressing the question of service. Such documents are not attached to this letter due to the burden of annexing this large number of materials in the short time frame available. Plaintiffs will amend this letter and attach such documents if requested by the Court or if motion practice arises as to the issue of service.

one another.  By such language it is also clear that the Empire entities must take and accept direction from Equinor ASA, another critical element for establishing either alter ego status or that the subsidiaries are agents of the parent corporation, in both cases meaning that service of process on the subsidiaries is service on the parent.[8]

Yet another indicia of alter ego status is that only Equinor's credit is offered to support Empire Wind, not that of any subsidiary, further evidence that Equinor and the Empire entities are alter egos of one another.   This can be seen under the "Financial Assistance" section of the "Empire Wind" BOEM application where the document refers to Equinor ASA as the financial surety for the project:

> In accordance with 30 CFR § 585.516, Empire is required to provide BOEM a supplemental bond, a decommissioning bond, or other financial assurance to assure that lessee obligations can be fulfilled prior to approval of the COP and prior to authorization to commence construction. BOEM, however, has the authority to allow evidence of financial strength and reliability to meet financial assurance requirements, as detailed in 30 CFR § 585.527.
>
> **Equinor has a strong financial standing and a long history of undertaking, self-funding, or obtaining, the necessary financing for large infrastructure projects in a responsible manner."**

See Empire Wind Construction and Operations Plan, Volume 1, Section 1.10, headed "Project Information" at p. 1-37, headed "Financial Assistance", https://www.boem.gov/sites/default/files/documents/renewable-energy/Public_EOW_COP_v7_Volume 1_Project Information Redacted.pdf [bold emphasis added].

As the text in bold shows, it is the creditworthiness of Equinor ASA that is offered to support the bond for the project, **not** the creditworthiness of any subsidiary or any other Empire entities, further evidence of the alter ego status of the LLCs to support service being deemed completed as to Equinor ASA.

In this same vein, the "Decommissioning" plan for Empire Wind states that the project is "operated *by Equinor*" and that all costs will be "financed on balance sheet *by Equinor*":

> **4. FINANCIAL CAPABILITY AND SECURITIES FOR DECOMMISSIONING**
>
> Empire Wind 1 is owned and ***operated by Equinor***, and as such ***decommissioning will be financed on-balance sheet by Equinor***. ***The company's financial strength will ensure that sufficient funding will be available and that financing issues will not give cause to delays***

---

[8] As with the federal COP and its Appendices, the State EM&CP document is headed "Prepared *for Equinor*" with the red Equinor logo printed on the cover and on each engineering drawing submitted to the State. See EM&CP at Figure 1, Figure 3-B and Figure 4-C.

9

> *in decommissioning.* Additional details on financial strengths are provided in the subsequent sections to demonstrate the collective capacity to finance decommissioning activities.
>
> **4.2 Financial Resources and Strength**
>
> ***Equinor is a globally renowned and stable energy company that exhibits notable financial strength*** derived from its diversified operations and strategic initiatives. ***With a robust balance sheet, Equinor has demonstrated a consistent ability to generate substantial revenue and profit*** that reflect the financial strength ***needed to fully execute, own, operate and responsibly decommission large scale energy projects*** in the ordinary course of its business. ***Equinor's prudent financial management practices have enabled it to maintain a healthy credit rating and access to capital for future growth.*** Furthermore, Equinor is a publicly traded company and is actively transitioning towards renewable energy and low-carbon solutions, positioning itself favorably in an evolving energy landscape, which enhances its long-term financial sustainability.

*See* Decommissioning Plan, Part 3 at Section "4" found on NYSERDA's docket at https://documents.dps.ny.gov/public/MatterManagement/CaseMaster.aspx?MatterSeq=65825&MNO=21-T-0366.

As the text in bold plainly states, it is *Equinor's* credit and *Equinor's* "balance sheet", not that of its subsidiaries or any other "Empire" entity, that is to provide funds to "operate" and "decommission" the project. This is clear evidence that the true financing and supporting party is *Equinor*, further demonstrating that service on the LLC's is equivalent to service on Equinor ASA.

The "Empire Wind" personnel are all listed as being contacted **at Equinor**, via its website "*equinor.com*" and have no independent point of contact at the subsidiaries or at any Empire LLP. Even the "Contact" page on the Empire Wind project website directs all email to equinor.com, the website owned by the parent, Equinor ASA. *See* https://www.empirewind.com/contact/ [downloaded August 18, 2025]. Where an alleged corporate entity refers all of its email to its parent, i.e., at equinor.com, it is clear that the so-called subsidiaries have no true independent existence and is a mere alter ego of the parent.

Examples of this nature abound throughout the regulatory file. For example, in BOEM's COP file for Empire Wind, the "Authorized Representative" is listed as Scott Lundin whose email address is sclu@*equinor.com,* meaning his email goes to the parent corporation, *not the subsidiary*. Mr. Lundin, although supposedly signing for an Empire "subsidiary", has no point of contact *except* at the parent company, equinor.com. *See* Empire Wind "Construction and Operations Plan (COP)", Volume 1 "Project Information" at p. 1-37 at https://www.boem.gov/sites/default/files/documents/renewable-energy/Public_EOW_COP_v7_Volume_1_Project Information Redacted.pdf.

Even the 2017 "commercial lease" from the government for the Empire Wind lease areas, the originating document that establishes the place in the ocean where the actual wind turbines are to be installed, was signed by an Empire Wind "Lease Representative" who gave her contact

information as the email address of the parent corporation, then known as Statoil (now Equinor). The 2017 lease was signed by Alyssa Karotkin whose email is listed on the lease as "alyka@*statoil.com*".  Thus, even though Karotkin signed on behalf of a subsidiary, "Statoil Wind US LLC", her actual point of contact is the parent company's website, then known as "statoil.com"and today, after the corporate name change, known as equinor.com.  *See* Commercial Lease for Submerged Lands…, March 10, 2027 at https://www.boem.gov/sites/default/files/renewable-energy-program/State-Activities/NY/OCS-A-0512-Lease.pdf [emphasis added].

A further example appears in the "Site Assessment Plan" filed in connection with the Empire Wind projects.  Here, the "contact" for Empire Wind is listed as Martin Goff, Environmental & Permitting Manager, who supposedly works at a subsidiary, "Empire Wind US LLC", but whose point of contact is listed as "equinor.com", i.e., "MGOF@*equinor.com*" [emphasis added].  *See* "Site Assessment Plan", Table 1-1 at https://www.boem.gov/sites/default/files/renewable-energy-program/State-Activities/NY/SAP-Equinor-Public.pdf.[9]

In this same way, on all of its submissions to BOEM and New York State (at least those that the undersigned counsel has been able to review thus far), the "Empire Wind" staff are identified only by an "equinor.com" email, not an email address of any Equinor subsidiary.  For example, in connection with designating a change of the BOEM air permit from "Empire Offshore Wind LLC" to "Empire Leaseholder LLC", the "Empire Wind" official communicating with BOEM identifies herself as having an "*equinor.com*" email address, in this case Eva Land with an email at evlan@*equinor.com*.  *See* Email and related documents at https://www.epa.gov/system/files/documents/2024-11/administrative-amend-request-.pdf.

Following this email exchange, BOEM itself understood that the actual "Lease Representative" and "Operations Representative" were "*Equinor*" officials, not employees of Empire Wind entities.  BOEM described David McSweeney, Senior Counsel, as the "Lease Representative" working at the "*Equinor*" office at 53 State Street, Boston MA 02109 (one of the four offices identified on the equinor.com website in addition to the Stamford, CT office) and using the Equinor email system: "damc@*equinor.com*".  BOEM described the "Operations Representative" for the Empire Wind project in the same terms, referring to Sam Byrne as working at the "*Equinor*" office at "600 Washington Blvd, Suite 800, Stamford, CT" and that Byrne used the equinor.com email address: "sbyrn@*equinor.com*".

Where even the federal regulator understood that "Equinor" is the real party in interest, it is clear that these entities are almost certainly alter egos of each other.  As a final example (there are many more), the Fisheries Liaison between Empire Wind and the fishing industry, is listed on the empirewind.com website as "Elizabeth Ann Kordowski, Fisheries Liaison Officer" but who can only be contacted at emarc@*equinor.com* [emphasis added]**.**  Thus, even where the employee is identified on the Empire Wind project website, the employee contact is *still* listed at the parent

---

[9] Like all other documents filed with BOEM, the cover for the Site Assessment Plan states that it is "**Prepared** *for Equinor*", again using the Equinor trademark and logo.  *See* "Site Assessment Plan", Table 1-1 at https://www.boem.gov/sites/default/files/renewable-energy-program/State-Activities/NY/SAP-Equinor-Public.pdf.

11

company, *equinor.com*.  See empirewind.com at https://www.empirewind.com/environment-and-sustainability/mariners-and-fisheries//.

Our research has also shown that Empire Wind entities use the "Equinor" trademark and red fan logo in papers filed in connection with the Empire Wind project, intentionally giving the imprimatur of Equinor to the regulatory process.   For example, on December 4, 2024 a letter was sent in the name of "Empire Wind" to the National Marine Fisheries Service (NMFS) requesting modifications to the Letter of Authorization (LOA) for incidental taking of protected species, a part of the regulatory process for offshore wind projects.  This letter, sent in the name of "Permitting Director —  Empire Wind", was *not* sent under an "Empire Wind" letterhead or any of the "Empire entities" but, instead, was sent on the "Equinor ASA" letterhead using the red Equinor trademarked fan logo.  See Letter dated December 4, 2024 at https://www.fisheries.noaa.gov/s3/2025-01/EmpireWind-2025ModLOA-App-OPR1.pdf.[10]

A further example of the regular use by the "Empire" entities of the Equinor trademark and logo in connection with Empire Wind can be seen in an October 25, 2023 letter sent by "Empire Wind LLC" to NMFS concerning the timing of the pile driving season for the Empire Wind project.  Even though this letter was sent under an "Empire Offshore Wind LLC" letterhead, on *every* page of the eight-page submission there appears the red Equinor trademark and fan logo, merging the identity of the subsidiary with the parent, Equinor ASA.   See Letter dated October 25, 2023 at https://www.fisheries.noaa.gov/s3/2024-02/EmpireWind-FinalRule-NarwToyrMemo-OPR1.pdf.

Yet another example of the merging of corporate identities appears in the "Stakeholder Engagement Plan that was submitted by Equinor to NYSERDA in connection with Empire Wind.  The cover of the Stakeholder Plan and *every* page of the nearly 300-page document contains the Equinor trademark and logo at the upper right-hand corner, even though the application is technically submitted in the name of one of the Empire entities, "Empire Offshore Wind LLC".  See Purchase of Renewable Offshore Wind Energy Credits, Section 8.3, "Stakeholder Engagement Plan", found at the NYSERDA docket at https://documents.dps.ny.gov/public/MatterManagement/CaseMaster.aspx?MatterSeq=65825&MNO=21-T-0366.[11]

The Stakeholder Engagement Plan also contains multiple examples of the use of the equinor.com website as the point of contact for the Empire Wind project.  For example, the Stakeholder plan contains a provision for comments about "Empire Wind" to be submitted to **equinor.com**, as follows:

> A toll-free local hotline 833-699-1965 and regularly monitored e-mail in-box empirewind@*equinor.com* have been established for the project to allow individuals to

---

[10] Moreover, the contact person at "Empire Wind" for this matter was listed as Jordan Carduner whose email address was, *yet again*, equinor.com: "jcard@*equinor.com*".
[11] As noted earlier, the Equinor trademark and logo also appear on every COP submission to BOEM.  See n. 4, *supra*.  This is not mere inadvertence but reflects a clear policy to identify "Empire Wind" with Equinor ASA.

> contact Empire Wind for information, ask specific questions, or share concerns and comments. … Calls placed to the hotline are recorded, documented and logged *in Equinor*'*s stakeholder database*, and directed to appropriate subject matter exports for appropriate resolution.

Thus, "Empire Wind" does not even have its own "Complaint" box but uses the equinor.com email address for complaints and comments, further evidence of the lack of substance in the independent existence of the subsidiaries.[12]

The name "Equinor" and the Equinor trademark and logo appear throughout the New York State application for Offshore Renewable Energy Credits (ORECs), the financing mechanism that allows offshore wind projects to go forward. Even though the OREC application is technically filed in the name of the subsidiary "Equinor Wind US LLC", the application is based on the credit and experience of *Equinor ASA*, **not** the subsidiary, as discussed below.

For example, Section 3.2.4 of the OREC application is headed "The Equinor Advantage" and refers in detail to "*Equinor's* demonstrated ability to successfully construct, own, and operate offshore wind projects…" and refers to the extent and scale of *Equinor's* resources, **not** the experience and resources of the LLC. *See e.g.* OREC Application, NYSERDA found at https://documents.dps.ny.gov/public/MatterManagement/CaseMaster.aspx?MatterSeq=65825&MNO=21-T-0366. All of this will be expressly briefed if there is a need for motion practice.

Funding for Empire Wind is also described as coming from *Equinor*, **not** the subsidiaries. For example, just seven months ago in January 2025 Equinor announced that it had obtained $3 billion in financing for Empire Wind 1. Like its other announcements as to Empire Wind, the press release speaks only of "*Equinor*" obtaining financing, not funding through any of the subsidiaries; the press release also states that "*Equinor* acquired the Empire Wind lease area in 2017," that "*Equinor* made a final investment decision on the wholly owned and operated Empire Wind 1 project earlier this year", among similar statements. All of this usage demonstrates that it is Equinor ASA that provides the credit, the funding and, as seen below, the operational and safety protocols for Empire Wind. *See* equinor.com, press release dated January 2, 2025 at https://www.equinor.com/news/20250102-securing-financial-close-empire-wind-1 [last downloaded August 18, 2025].

Identical usage appears in other press releases at the equinor.com website in which Equinor itself is always identified as the party in interest, not its subsidiaries or "indirect" entities. *See e.g.* https://www.equinor.com/news/20240415-swaps-us-onshore-assets; https://www.equinor.com/news/20250116-arkansas-lithium-usd-225-million-award; https://www.equinor.com/news/20241029-strengthens-gas-portfolio.[13]

---

[12] Moreover, as Figure 1 to the Stakeholder plan shows, *all* of the contacts that are listed for Empire Wind are on the equinor.com website; there is no list of any personnel who are contacted at any subsidiary website. *See* Stakeholder Plan at Figure 1, "Contact Details".

[13] All downloaded last on August 18, 2025.

On its annual report, Equinor ASA lists the Empire Wind 1 project in Equinor ASA's "portfolio" of assets, **not** under a subsidiary or other entity, further demonstrating the essential unity of the parent and the subsidiaries.  Equinor Annual Report 2024 at 114 headed "Portfolio Overview"; https://cdn.equinor.com/files/h61q9gi9/global/16ccbc5a098c3b971979118420c4f83ddee18fb4.pdf?annual-report-2024-equinor.pdf [last downloaded August 18, 2025].

In the annual report, Equinor ASA also refers to "Empire Wind" as causing growth in *Equinor ASA's* portfolio (not in its subsidiaries' portfolio):

> "Equinor continues to mature its renewables portfolio under development. During 2024 Equinor closed an asset swap transaction with bp, under which Equinor took full ownership of the Empire Wind lease and projects and bp took full ownership of the Beacon Wind lease and projects." *See* Equinor Annual Report 2024 at 195, *supra*.

In the annual report, Equinor ASA also states that its acquisition of BP's interest in Empire Wind *expanded* Equinor ASA's book value, not that of some subsidiary or "indirect" entity:

> "Over the course of 2024, the additional investments in the South Brooklyn Marine Terminal (SBMT) and Empire Wind projects in the US …  contributed to the significant increase in the book value compared to the prior year" Equinor Annual Report 2024 at 195, *supra*.

In the 2024 annual report, Equinor ASA repeatedly refers to "we" in terms of activity in connection with Empire Wind, **not** to any other entity or subsidiary:

> "*We* submitted a bid for the Empire Wind 1 offshore wind project in New York and took full ownership in a deal with bp."
>
> "*We* secured a new offtake agreement for Empire Wind."
>
> "…*we* secured financial close for Empire Wind 1 at favourable terms."
>
> "…a USD 147 million net loss resulting from the asset swap transaction between *Equinor and bp* in the first quarter, under which *Equinor took full ownership* of the Empire Wind lease and projects…"

14

> *We* have now entered an execution phase, with three mega projects in construction and an all-time high activity level:
> • Dogger Bank (UK), ***Empire Wind 1 (USA)*** and Baltyk II & (Poland)"

See <u>Equinor Annual Report 2024</u> at 8, 63, *supra* [emphasis added].

In the Annual Report Equinor states that no separate balance sheet exists for Empire Wind that is, instead, merged into Equinor ASA's financial statement, like any other corporate activity:

> "Equinor's offshore wind activities consist of the the development of the Empire Wind farm in US which after the swap with BP, ***is consolidated into Equinor group financial statement***…"
> See <u>Equinor ASA, Annual Report</u> at 123, *supra* [emphasis added].

At page 208 of the Annual Report, Equinor notes that it assumed a direct USD 147 million *loss* due to the acquisition of BP's 50% interest in Empire Wind 1:

> "The swap resulted in a combined loss of USD 147 million in the first quarter 2024, recognised in the REN segment and presented in the line item Operating expenses in the Consolidated statement of income."*See* <u>Equinor ASA, Annual Report</u> at 208, *supra* [emphasis added].

While this present letter is not a brief and is not under oath (but it does rely almost entirely on Equinor ASA's own documents and identifies the sources), the totality of this discussion shows that Empire Wind is an Equinor ASA project, it is "developed" and "operated by Equinor ASA, it is recorded by Equinor ASA as having direct impacts on the corporation's balance sheet with no separate published balance sheets for the subsidiaries or LLCs. Empire Wind is treated, in all respects, as a part of Equinor ASA's business operations. Identical references to the essential unity of Equinor ASA with Empire Wind and the LLCs appear in the Empire Wind application to NYSERDA but are omitted from this letter for purposes of brevity.

## **CONCLUSION**

This letter is intended as a general discussion of the issues concerning service on Equinor ASA and is not a statement submitted under oath or as a formal brief. Plaintiffs are in possession of the documents and information referred to in this letter and are prepared to produce such documents, and set out the source of such materials under oath, if requested by the Court, or in response to any motion filed by Equinor ASA to contest service; alternately, plaintiffs will submit a formal motion and brief if the Court directs that plaintiffs move to deem Equinor ASA

15

served (although the burden rests on the defendant to contest service via a motion made under oath).

As this summary shows, at a minimum there exists a factual issue as to: 1) whether Equinor ASA maintains an office location at the Stamford office such that service was accomplished; or 2) in the alternative that the Empire entities, i.e., the LLC's that have already been served, are "alter egos' or agents of the parent and that Equinor ASA can be deemed served by virtue of service on the subsidiaries.

Although not discussed at length in this letter, Equinor is established as an agency of the government of Norway and the Norwegian Government flow chart previously filed with the Court shows that it is housed as an agency in the Ministry of Industry and Fishes.  Therefore, if service has been accomplished on Equinor ASA then service should be deemed accomplished on Norway, the purpose of service being to reasonably assure notice of the claim on the foreign government.  In any event, the Kingdom of Norway is not a necessary party since Equinor ASA is an agency of the Norway government and is already in the action.  Plaintiffs are prepared, if necessary, to dismiss Norway voluntarily without prejudice to avoid further delay and get this matter to a hearing on motion for preliminary injunction in the hope of preventing further destruction of the inner sea coast off Long Island.

                Respectfully submitted,

                S/Bruce I. Afran
                  Attorney-at-Law
                  10 Braeburn Dr.
                  Princeton, NJ 08540
                  609-454-7435 (mobile)
                  bruceafran@aol.com
                *Counsel for Plaintiffs*

C: Via ECF to all counsel of record