The Honorable Georgette Castner, U.S.D.J.
Clarkson S. Fisher Building & U.S. Courthouse

**Re:** ***Protect Our Coast NJ, et al v. United States of America et al.;*** **3:25-cv-*06890-GC-TJB***

Dear Judge Castner:

As counsel for plaintiffs, I write in response to defendants' pre-motion letters seeking leave to move to dismiss. The issues raised by defendants are addressed in turn, below:

**A. The action as to the 2017 lease is not time-barred**. Plaintiffs' challenge to the legality of the Empire Wind lease was filed in June 2025. This is within six years of BOEM's November 2023 approval of the Construction and Operations Plan (COP) for this project. It is approval of the COP that allows construction under the lease, triggering the six-year period of limitations. This follows longstanding Supreme Court doctrine that agency action is not ripe for adjudication "until an administrative decision has been *formalized* and its effects felt in *a concrete way* by the challenging parties." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732-733 (1998), quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-149 (1967)[emphasis added]. Put another way, no "final" agency action exists until "*consummation* of the agency's decision-making process". *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997)[emphasis added].

These considerations apply equally to the Empire Wind lease. *Ohio Forestry Ass'n* held that a forest plan was not ripe for challenge because it "does not itself authorize the cutting of any trees…", a decision that must await completion of agency review and a determination of "the harvesting method to be used…" 523 U.S. at 729-730. In this same way, Empire Wind's 2017 lease did not ripen into a "formalized" or "concrete" act, *id.*, until the COP was approved in November 2023. Until then, Equinor and its LLCs had no right to construct and possessed, at best, an inchoate future right, similar to the unconsummated plan in *Ohio Forestry Ass'n*. BOEM regulations even provide that the lease was "preliminary" until the COP was approved. 30 C.F.R. §585-235(a). Equinor was not even required to pay rent until "the date that BOEM approves the COP…" *See* Lease at Appendix D-1. As such, no final agency action arose until November 2023 when the COP was approved and plaintiffs' action was timely filed within six years of that date.

**B. No Notice was Required Because the Action Falls Under the APA.** Plaintiffs' claims arise under the APA that allows a challenge to "arbitrary and capricious" agency action, a statute with **no** notice requirement. *Bennett v. Spear*, *supra*, 520 U.S. at 176-178 (plaintiffs need not file any 60-day notice under the Endangered Species Act because their remedy arises under the APA's "arbitrary and capricious" provisions). This doctrine has been repeatedly applied to challenges to agency actions under OCSLA. *Amerada Hess Corp. v. DOI*, 170 F.3d 1032 (10th Cir. 1999) (applying *Bennett* and holding that challenge to the Secretary's exercise of his authority under OCSLA is properly made under the APA, **not** OCSLA); *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 696 F. Supp. 2d 627, 634 (E.D. La. 2010)(applying *Bennett* and *Amerada Hess,* and holding that "the APA and not the citizen suit provision under OCSLA, is the appropriate vehicle

to challenge a decision by the Secretary rendered in fulfillment of his duties under OSCLA."); *Western Watersheds Project v. United States Forest Serv*., 535 F. Supp. 2d 1173, 1183 (D. Idaho 2007)(same). Plaintiffs' complaint challenging the Secretary's actions as arbitrary and capricious properly lies under the APA, for which **no** notice was required, and any defect in the 60-day notice is irrelevant.[1]

By this same reasoning, there is no merit to defendants' claims that plaintiffs cannot seek relief under the APA, a form of relief authorized by the Supreme Court. *Bennett v. Spears*, 520 U.S. at 176-178. Plaintiffs' claims of arbitrariness under the APA arise from the Secretary's failure to apply standards under OCSLA designed to avoid environmental and economic harm, as stated at 43 U.S.C. §§1344,1345,1346 and in BOEM regulations. When the Secretary reinstated the Empire Wind permit without making findings that a proper review had been undertaken under OCSLA, plaintiffs stated a claim for economic harm "arguably within the zone of interests to be protected or regulated by the statute [] in question." *Bennett, supra* at 175. These injuries also arise from BOEM's grant of a lease to a foreign government in excess of the Secretary's authority under OCSLA. As such a claim is properly made under the APA challenging the Secretary's fulfillment of his duties under a "relevant statute" whose violation "forms the legal basis for [the] complaint." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990).

**C. No statute delegates non-reviewable "discretionary" power to the Secretary under OCSLA.** A party loses the right of judicial review under the APA only where a statute delegates non-reviewable "discretionary" power to the agency. *Bennett v. Spear*, 520 U.S. at 177-178. But defendants identify no statute that delegates non-reviewable power as to implementation of OCSLA. To the contrary, OCSLA contains detailed standards that govern agency approval (or disapproval) of offshore wind leases or permits. *See e.g.* 43 U.S.C. §§1344,1345,1346. This is **not** a case where "[a] statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Accordingly, the Secretary's challenged actions are not "discretionary" and complaint was properly brought under the APA for failure to properly evaluate standards under OCSLA.

---

[1] Even if notice was required under OCSLA (as defendants claim), plaintiffs properly filed less than 60 days notice because reinstatement of the permit on May 19, 2025 would allow construction to begin two weeks later, on June 1, 2025, and "would immediately affect a legal interest of the plaintiff", allowing for abbreviated notice by statute. 43 U.S.C. § 1349(a)(3). Case law widely recognizes abbreviated notice to avoid imminent harm. *Louisiana v. Biden*, U.S. Dist. LEXIS 183239, *34-35 (La. W.D. 2021)(two days notice to block order halting drilling); *M.L. Johnson Family Props, LLC v. Jewell*, 27 F. Supp. 3d 767, 770 (D. E.D. Ken. 2014)(short notice to block imminent mining that would injure plaintiff's property); *Chevron USA, Inc. v. FERC*, 193 F. Supp. 2d 54 (D. D.C. 2001)(five days notice to block release of confidential information); *cf., Brown v. Offshore Specialty Fabricators, Inc*., 663 F.3d 759, 767-769 (5th Cir. 2011) (recognizing short notice but, denying relief on other grounds).

**D. <u>The Equinor LLCs are controlled by an agency of a foreign government and are not "private corporations" under OSCLA</u>.** Nowhere do defendants deny Equinor ASA is an instrumentality of Norway and ineligible to lease under OCSLA. Instead, defendants claim that because Equinor's wholly-owned LLCs are incorporated in U.S. states they are "private corporations" and allowed to lease under OCSLA. This stratagem ignores Congress's careful delineation of U.S. government entities that qualify as a "person" under OCSLA: a "federal agency," a U.S. "State", a "political subdivision of a State" and "a Native American Tribal government". 43 U.S.C. § 1331(d). It is an evasion for a foreign government to incorporate LLCs in the U.S. and then claim they are "*private* corporations" under OCSLA. Foreign governments and their instrumentalities are simply not within OCSLA, an interpretation consistent with the Dictionary Act, 1 U.S.C. § 1, that excludes "foreign governments" from the term "person" *unless* there is a specific definition or clear evidence of Congressional intent. *Al Fayed v. CIA*, 229 F.3d 272, 274 (D.C. Cir. 2000). The Supreme Court has "repeatedly held that the word 'person' in a statute does not include a sovereign government absent affirmative evidence of such an inclusory intent." *Al Fayed*, citing *Ngiraingas v. Sanchez*, 495 U.S. 182, 191 (1990).

Nowhere is there "affirmative evidence" of Congressional intent to lease to foreign governments. To the contrary, Congress has long recognized the continental shelf as vital to U.S. national security. As the Supreme Court has observed, "Congress chose to retain exclusive federal control of the administration of the Shelf because it underlay the high seas and the assertion of sovereignty there implicated the foreign policies of the Nation". *Gulf Offshore Co., Div. of Pool Co. v. Mobil Oil Corp*., 453 U.S. 473, 479 (1981). This is consistent with OCSLA that declares "the outer Continental Shelf is *a vital national resource* reserve held by the Federal Government *for the public*…." 43 U.S.C. §§ 1332(c). Such language is contrary to the notion that foreign governments may obtain rights in submerged U.S. lands. Nor can it be seriously disputed that Equinor and its LLC's are an agency of Norway. The LLCs are owned and controlled by Equinor that is housed in Norway's Ministry of Trade, Industry and Fisheries, and subject to regulations that render it a part of Norway's government, as previously briefed (ECF No. 26-3). These are not "*private* corporations" and are ineligible to lease on the outer continental shelf.

**E. <u>A nexus exists between agency action and injury to plaintiffs</u>**. Plaintiffs' injuries from loss of fishing grounds in the lease area and loss of business to be caused by the project create standing to challenge the reinstatement of the permits and the illegality of the lease. Other plaintiffs are organizations that protect marine mammals in the Bight or represent businesses that will be injured. <u>Amended Complaint</u> at ¶¶15-30 (ECF No. 33). Plaintiffs Fishermans Dock Cooperative, Seafreeze Shoreside Inc. and Long Island Commercial Fishing Association were parties in the 2016 action where the Court found plaintiffs *did* have standing for projected economic injuries from the lease solicitation for this project. *Fisheries Survival Fund v. Jewell*, 2018 U.S. Dist. LEXIS 168532, *17 (D. D.C., 2018). Just as standing arose from defects in lease solicitation, it also arises from an actual illegal lease to a foreign government — without the lease, the injuries do not arise. BOEM's reinstatement of the permit while making no findings that OCSLA's standards, *see e.g*. 43 U.S.C. §§1344m1345,1346, were satisfied, also allows the claimed harm and puts plaintiffs in the "zone of interests" protected by OCSLA. *Bennett* at 175.

Respectfully submitted,

S/Bruce I. Afran
Attorney-at-Law
10 Braeburn Dr.
Princeton, NJ 08540
609-454-7435 (mobile)
bruceafran@aol.com
*Counsel for Plaintiffs*

C: Via ECF to all counsel of record