David J. Ball (NJ Bar No. 036732004)
**Bracewell LLP**
31 West 52nd Street, 19th Floor
New York, NY 10019
Tel: (212) 508-6133
Email: david.ball@bracewell.com

*Counsel for Defendants Empire Offshore Wind LLC, Empire Leaseholder, LLC, and Empire Wind 2 LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PROTECT OUR COAST NJ, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE UNITED STATES OF AMERICA, *et al.*,<br><br>*Defendants*. | Case No. 3:25-cv-06890-GC-TJB<br><br>Judge Georgette Castner<br>Magistrate Judge Tonianne J. Bongiovanni<br><br>**MEMORANDUM IN SUPPORT OF EMPIRE WIND'S MOTION TO DISMISS**<br><br>Motion Return Day: October 5, 2026 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 3

I. Statutory and Regulatory Background ..... 3

II. Empire Wind Project Background ..... 6

A. BOEM's Review And Authorization Of The Empire Wind Project ..... 6

III. Issuance of the Stop Work Order ..... 9

ARGUMENT ..... 10

I. Legal Standard ..... 10

A. Rule 12(b)(1) ..... 10

B. Rule 12(b)(6) ..... 11

ARGUMENT ..... 12

I. Plaintiffs' OCSLA and APA Claims Must Be Dismissed Because Plaintiffs Failed To Comply With OCSLA's 60-Day Notice Requirement ..... 13

II. Plaintiffs' Challenge to the Issuance of the Empire Wind Lease Is Barred By The Six-Year Statute Of Limitations ..... 20

III. Plaintiffs' OCSLA Claim Should Be Dismissed For Failure To State A Claim ..... 24

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allco Renewable Energy Ltd. v. Haaland*,
No. 1:21-CV-11171-IT, 2022 WL 2373914
(D. Mass. June 30, 2022) ....................16

*Allegheny Cnty. Sanit. Auth. v. EPA*,
732 F.2d 1167 (3d Cir. 1984) ....................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................11, 12, 24

*Baldwin v. Housing Authority of City of Camden*,
278 F. Supp. 2d 365 (D.N.J. 2003)....................2

*Baraka v. McGreevey*,
481 F.3d 187 (3d Cir. 2007) ....................12

*Basel Action Network v. Maritime Administration*,
370 F. Supp. 2d 57 (D.D.C. 2005)....................19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................11, 12, 25

*Bennett v. Spear*,
520 U.S. 154 (1997)....................18

*Bowen v. Massachusetts*,
487 U.S. 879 (1988)....................18

*Commonwealth of Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health and Hum. Servs.*,
101 F.3d 939 (3d. Cir. 1996) ....................21, 22

*Const. Party of Pa. v. Aichele*,
757 F.3d 347 (3d Cir. 2014) ....................10, 11, 15

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*,
698 F. Supp. 3d 39 (D.D.C. 2023)....................13

*Defenders of Conewango Creek v. Echo Developers, LLC*,
No. 1:06-cv-00242, 2007 WL 3023927 (W.D. Pa. Oct. 12, 2017) ....................18

*Duke Energy Field Servs. Assets, LLC v. FERC*,
150 F. Supp. 2d 150 (D.D.C. 2001)....................................................................15

*Eagle–Picher Indus., Inc. v. EPA*,
759 F.2d 905 (D.C. Cir. 1985)............................................................................22

*Fisheries Survival Fund v. Haaland*,
858 F. App'x 371 (D.C. Cir. 2021)......................................................................16

*Fisheries Survival Fund v. Jewell*,
No. 1:16-CV-2409 (TSC), 2018 WL 4705795
(D.D.C. Sep. 30, 2018) ...................................................................................17, 23

*Green Oceans v. U.S. Dep't of the Interior*,
No. 1:24-CV-141-RCL, 2025 WL 973540
(D.D.C. Apr. 1, 2025) ...........................................................................15, 16, 19

*Hallstrom v. Tillamook Cnty.*,
493 U.S. 20 (1989)........................................................................................15, 20

*Huertas v. Bayer US LLC*,
120 F.4th 1169 (3d Cir. 2024) ............................................................................24

*Korotki v. Levenson*,
No. 1:20-CV-11050, 2021 WL 2650775 (D.N.J. June 28, 2021) ................12, 25

*Kreschollek v. S. Stevedoring Co.*,
78 F.3d 868 (3d. Cir. 1996) ................................................................................14

*Marsh v. Or. Nat. Res. Council*,
490 U.S. 360 (1989).............................................................................................13

*Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
453 U.S. 1 (1981).................................................................................................14

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
549 F.2d 884 (3d Cir. 1977) ................................................................................11

*Munoz-Medoza v. Pierce*,
711 F.2d 421 (1st Cir. 1983)..................................................................................2

*Oom Inc. v. United States*,
No. 2:22-CV-2762, 2023 WL 5337150 (D.N.J. Aug. 18, 2023)........................21

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir.1993) ........................................................................12, 25

*Pub. Int. Rsch. Grp. v. Windall*,
51 F.3d 1179 (3d Cir. 1995) ..........................................................................15

*Save Long Beach Island, v. U.S. Dep't of Com.*,
No. 1:25-CV-02214 (CJN), 2026 WL 2150375
(D.D.C. July 27, 2026)..........................................................................13, 15, 19

*In re Schering Plough Corp.*,
678 F.3d 235 (3d Cir. 2012) ..........................................................................11

*Seafreeze Shoreside, Inc. v. U.S. Dep't of the Interior*,
No. 1:22-CV-11091-IT, 2023 WL 6691015 (D. Mass. Oct. 12,
2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024).......................................8, 20, 21

*Wis. Valley Improvement Co. v. FERC*,
236 F.3d 738 (D.C. Cir. 2001).......................................................................10

**Statutes**

28 U.S.C. § 2401(a) ..........................................................................................20

Administrative Procedure Act,
5 U.S.C. § 702 *et seq.* ....................................... 2, 8, 9, 12, 13, 16, 17, 18, 19, 20

Energy Policy Act of 2005,
Pub. L. 109-58, 119 Stat. 594 (2005) ..............................................................3

National Environmental Policy Act,
42 U.S.C. § 4321 *et seq.* ...........................................................................7, 8, 23

Outer Continental Shelf Lands Act,
43 U.S.C. § 1331 *et seq.*
..................2, 3, 4, 5, 6, 8, 9, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ........................................................2, 10

Federal Rule of Civil Procedure 12(b)(6) ............................................2, 11, 12, 20

**Regulations**

30 C.F.R. Part 585..................................................................................................4

30 C.F.R. § 585.102(a)............................................................................................4

30 C.F.R. § 585.107(a)(3)...............................................................................24, 25

30 C.F.R. § 585.108(d) .........................................................................................24

30 C.F.R. § 585.417 ................................................................................................5

30 C.F.R. § 585.418(c)............................................................................................5

78 Fed. Reg. 760 (Jan. 4, 2013) ..............................................................................7

86 Fed. Reg. 33351 (June 24, 2021) ...................................................................7, 8

88 Fed. Reg. 63615 (Sept. 15, 2023) .......................................................................7

88 Fed. Reg. 83146 (Nov. 28, 2023)..................................................................8, 10

**Other Authorities**

Empire Wind Final Environmental Impact Statement, Appendix A, https://www.boem.gov/renewable-energy/state-activities/empirewindfeisapparequiredpermits-0...............................................9

Empire Wind's COP Approval, https://www.boem.gov/renewable-energy/state-activities/empire-wind-1-conditions-cop-approvalpdf ..........................................................8, 9

Empire Wind's ROD, https://www.boem.gov/renewable-energy/state-activities/empire-wind-oca-0512-rod...............................................................................................8

New York State Energy Research and Development Authority/Offshore Wind Projects, https://www.nyserda.ny.gov/All-Programs/Offshore-Wind/Focus-Areas/NY-Offshore-Wind-Projects (site last visited September 1, 2026) ....................9

Sec'y Order No. 3451, *Establishment of the Marine Minerals Administration* (U.S. Dep't of the Interior, July 10, 2026) ....................1

## PRELIMINARY STATEMENT

Plaintiffs' Amended Complaint challenges the Empire Wind Project ("Project"), an offshore wind project being developed by Empire Wind[1] on the Outer Continental Shelf ("OCS") approximately 14 miles offshore New York, in an area established by federal offshore wind lease OCS-A 0512 ("Lease") between Empire Leaseholder LLC and the Bureau of Ocean Energy Management ("BOEM") of the United States Department of the Interior ("Interior").[2] The Project was approved after more than 10 years of extensive and exhaustive regulatory and environmental review, supporting leasing, licensing and permitting analysis by multiple and federal and state agencies. This process included BOEM's issuance of the Lease in 2017 and approval of the Project's Construction Operations Plan ("COP") in 2024. Construction has been ongoing since 2024, and the Project is expected to begin commercial operation in 2027. Once operational, the Project will meet critical

---

[1] Empire Offshore Wind LLC, Empire Leaseholder LLC, and Empire Wind 2 LLC are collectively referred to herein as "Empire Wind." Named Defendants Equinor ASA and the Kingdom of Norway have not appeared in this matter. All parties (other than Defendants Equinor ASA and the Kingdom of Norway) stipulated to stay the issue of whether Plaintiff validly served Defendants Equinor ASA and the Kingdom of Norway and proceed with dispositive motion practice. *See* Dkt. No. 62.

[2] On July 10, 2026, Secretary of the Interior Doug Burgum issued Secretarial Order No. 3451 combining BOEM and the Bureau of Safety and Environmental Enforcement into a single Bureau, the Marine Minerals Administration. This motion refers to BOEM because the Marine Minerals Administration has not been named as a party to this action as BOEM has, and BOEM is the agency that issued the agency actions challenged in Plaintiffs' Amended Complaint.

energy and grid reliability needs by providing New York with 810 megawatts of energy, enough to power roughly 500,000 homes.

More than eight years after the Lease was issued, Plaintiffs filed this action seeking to halt the Project as it nears completion based on two claims: (1) BOEM allegedly violated the Outer Continental Shelf Lands Act ("OCSLA") when issuing the Lease in 2017 to Empire Wind; and (2) BOEM allegedly violated the Administrative Procedure Act ("APA") when it revised its April 16, 2025, Director's Order halting the Project's construction ("Stop Work Order") and allowed construction of the Project to resume. Based on these claims, Plaintiffs seek an order holding BOEM's action as unlawful and vacating Empire Wind's Lease and all related permits to construct the Project, as well as an order reinstating the Stop Work Order.[3]

Plaintiffs' Amended Complaint must be dismissed in its entirety for multiple independent reasons. First, both of Plaintiffs' claims should be dismissed for lack

---

[3] While Plaintiffs' Amended Complaint names Empire Offshore Wind LLC, Empire Leaseholder LLC, and Empire Wind 2 LLC as defendants in this action, their complaint challenges only actions by federal agencies. *See e.g.*, *Munoz-Medoza v. Pierce*, 711 F.2d 421, 430 (1st Cir. 1983); *see also Baldwin v. Housing Authority of City of Camden*, 278 F. Supp. 2d 365, 374 (D.N.J. 2003). Thus, the nonfederal entities are not proper defendants to this action. However, because Empire Offshore Wind LLC, Empire Leaseholder LLC, and Empire Wind 2 LLC would have sought to intervene as of right if they were not named as defendants, Empire Wind has not moved to dismiss these entities from the action on these grounds.

of subject matter jurisdiction due to Plaintiffs' failure to comply with OCSLA's statutory requirement to provide Empire Wind and the federal government with notice of the alleged violations at least 60 days prior to filing a lawsuit. 43 U.S.C. § 1349(a)(2)(A). Second, Plaintiffs' claim under OCSLA challenging the 2017 issuance of the Lease is barred by the six-year statute of limitations. Third, Plaintiffs fail to state a claim for relief as a matter of law under OCSLA. Plaintiffs allege that Empire Wind is not permitted to hold its lease because the leaseholder is a "foreign government or instrumentality" based on its ownership structure. But Plaintiffs ignore that OCSLA and BOEM's regulations authorize companies duly incorporated under United States law, like Empire Wind, to own offshore leases issued by the federal government.

Plaintiffs' claims should be dismissed.

## BACKGROUND

### I. Statutory and Regulatory Background

Use of the OCS for energy development is governed by OCSLA and overseen by Interior. 43 U.S.C. §§ 1331 *et seq*. Following a 2005 amendment, OCSLA's central mandate—to develop the OCS expeditiously and competitively—encompasses federal leasing for offshore renewable energy development. *See* Energy Policy Act of 2005, Pub. L. 109-58, 119 Stat. 594 (2005); 43 U.S.C. § 1332(3). In 2009, BOEM first issued regulations defining the leasing and

permitting process applicable to renewable energy projects. *See* 30 C.F.R. Part 585. BOEM's regulations outline four main stages of offshore wind project development on the OCS: planning, leasing, site assessment, and construction and operation. *See generally id.*

Pursuant to these regulations, BOEM undertakes a multi-year review to determine where to site offshore renewable energy leases, holds a competitive auction to issue leases to the highest bidder, regulates site assessment and surveys by lessees, and reviews Construction and Operations Plans, or "COPs," the main application proposing the construction and operation of an offshore wind project on the OCS. *See id.* When issuing a lease and approving project activities on a lease, Section 1337(p)(4) of OCSLA provides that the Secretary of the Interior "shall ensure that any activity . . . is carried out in a manner that provides for" a set of twelve factors, including protection of the environment, conservation of the natural resources of the OCS, and prevention of interference with reasonable uses of the OCS. *See* 43 U.S.C. § 1337(p)(4). In turn, BOEM's regulations require a "balance among" the twelve factors, "to the extent they conflict or are otherwise in tension, none of which inherently outweighs or supplants any other . . . ." 30 C.F.R. § 585.102(a).

OCSLA allows BOEM to suspend activities on an offshore lease in very limited circumstances. Under Section 1334, BOEM may prescribe regulations for

suspension of "any operation or activity," "if there is a threat of serious, irreparable, or immediate harm or damage to life (including fish and other aquatic life), to property, to any mineral deposits . . . or to the marine, coastal, or human environment . . . ." 43 U.S.C. § 1334(a)(1). BOEM's regulations also provide that BOEM may suspend a lease "[w]hen necessary to comply with judicial decrees prohibiting some or all activities under [the lessee's] lease; or . . . [w]hen the suspension is necessary for reasons of national security or defense." 30 C.F.R. § 585.417.[4] When doing so, however, a suspension order must comport with OCSLA's requirements for a suspension and must "explain the reasons for its issuance and describe the effect of the suspension order on [the lessee's] lease or grant and any associated activities." *Id.* § 585.418(c).

Section 8 of the Lease places additional restrictions on the "suspension of on-lease activities." *See* Exhibit A, Lease OCS-A 0512 at 3-4 (effective Apr. 1, 2017). The Lease provides that "[a]ny cancellation or suspension ordered by [BOEM] that is predicated on a threat of serious irreparable, or immediate harm or damage, or on an imminent threat of serious or irreparable harm or damage, requires a finding by

---

[4] Section 1341(c) of OCSLA allows suspension of activities for national security reasons in very limited circumstances, but this authority is irrelevant here. *See* 43 U.S.C. § 1341(c).

[*BOEM*] of particularized harm that it determines can only be feasibly averted by suspension of on-lease activities." *Id*. (emphasis added).[5]

## II. Empire Wind Project Background

### A. BOEM's Review And Authorization Of The Empire Wind Project[6]

The Project involves the construction of a utility-scale offshore wind farm offshore Brooklyn, New York, in an area defined by the Lease. BOEM issued the Lease to Statoil Wind US LLC in 2017, and Statoil Wind US LLC later changed its name to Equinor Wind US LLC. In 2021, Equinor Wind US LLC assigned the Lease to Empire Offshore Wind LLC, and, in 2024, Empire Offshore Wind LLC assigned the Lease to Empire Leaseholder LLC.[7] *See* Exhibit A. In total, three entities have

---

[5] The Lease also provides that "[a]ny cancellations are subject to the limitations and protections contained in subsections 5(a)(2)(B) and (C) of the Act (43 U.S.C. § 1334(a)(2)(B) and (C))." These sections of OCSLA provide that "such cancellation shall not occur unless and until operations under such lease or permit shall have been under suspension, or temporary prohibition, by the Secretary, with due extension of any lease or permit term continuously for a period of five years, or for a lesser period upon request of the lessee . . ." 43 U.S.C. § 1334(a)(2)(B). They also provide that the lessee shall be entitled to receive just compensation. *Id*. §1334(a)(2)(C).

[6] Section II(A) and II(B) provide the Court with background and context. All facts are taken either from Plaintiffs' Amended Complaint or other publicly available government documents.

[7] Consistent with approvals issued by the United States, Empire Wind is developing the Project in two phases: Empire Wind 1 ("EW 1") and Empire Wind 2 ("EW 2"). EW 1 is currently under construction in the western portion of the Lease area and EW 2 has not begun construction. Empire Offshore Wind LLC now serves as the designated operator for the portions of the Lease relating to EW 1, while Empire

held the Lease, and each is a limited liability company organized under the laws of a U.S. state.

The Project began over a decade ago when BOEM first proposed leasing portions of the OCS offshore of New York for wind development. *See* Potential Commercial Leasing for Wind Power on the Outer Continental Shelf (OCS) Offshore New York, Request for Interest, 78 Fed. Reg. 760 (Jan. 4, 2013). BOEM issued the Lease for the Project in 2017, and the Project's permitting process took more than seven years following Lease issuance. *See* Ex. A, Empire Wind Lease (effective Apr. 1, 2017). The process included the completion of extensive site surveys of the Lease area; the submission of thousands of pages of application materials to federal, state, and local agencies; and consultation with federal and state agencies to avoid impacts to, among others, the environment and historic and cultural resources. BOEM prepared an Environmental Impact Statement as required by the National Environmental Policy Act ("NEPA"), and multiple federal agencies, including the National Marine Fisheries Service ("NMFS"), were involved in BOEM's preparation of that environmental review. *See* 88 Fed. Reg. 63615 (Sept. 15, 2023); *see also* 86 Fed. Reg. 33351 (June 24, 2021). BOEM spent over 26 months analyzing the Project's environmental impacts and soliciting public

---

Wind 2 LLC serves as the designated operator for the portions of the Lease relating to EW 2.

comments, which culminated in BOEM's publication of the Project's final Environmental Impact Statement on September 15, 2023.[8] *Id*. BOEM then issued a record of decision ("ROD") pursuant to NEPA on November 21, 2023, that contained the agency's conclusions regarding the Project's environmental impacts. *See* 88 Fed. Reg. 83146 (Nov. 28, 2023). BOEM also published a 29-page memorandum evaluating the Project in relation to the twelve enumerated factors in subsection 8(p)(4) of OCSLA, 43 U.S.C. § 1337(p)(4), including protection of the environment, navigation, safety, and national security.[9]

BOEM approved Empire Wind's COP ("COP Approval") on February 21, 2024, subject to dozens of terms and conditions that span 103 pages.[10] The COP

---

[8] Plaintiffs' Amended Complaint contains numerous unsupported allegations regarding alleged harms and hazards that Plaintiffs claim will result from the Project. Amended Complaint ¶¶ 90-223. To the extent Plaintiffs cite anything for these assertions, they, for the most part, cite documents that pre-date the final Environmental Impact Statement and the BOEM Empire Wind COP Approval for the Project. If Plaintiffs believed BOEM's analysis of these issues violated the law, Plaintiffs could have brought a challenge to the COP Approval. *See, e.g.*, *Seafreeze Shoreside, Inc. v. U.S. Dep't of the Interior*, No. 1:22-CV-11091-IT, 2023 WL 6691015, at *22 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024) (rejecting plaintiffs' APA challenge to Vineyard Wind offshore wind project COP Approval).

[9] Empire Wind's ROD and the memorandum on compliance with 43 U.S.C. § 1337(p)(4) are available online at https://www.boem.gov/renewable-energy/state-activities/empire-wind-oca-0512-rod. This and the following references are provided for background purposes only.

[10] Empire Wind's COP Approval is available online at https://www.boem.gov/renewable-energy/state-activities/empire-wind-1-conditions-cop-approvalpdf. BOEM amended Empire Wind's COP Approval in December 2024 to issue separate COP Approvals for EW 1 and EW 2.

Approval authorizes Empire Wind to construct and operate the Project.[11] In addition to BOEM's approval under OCSLA, the Project required dozens of local, state, and other federal permits.[12] Construction began in 2024, including at the South Brooklyn Marine Terminal in Brooklyn, New York, which will house the Project's onshore substation and serve as a construction and operations and maintenance port for the Project. Empire Wind is expected to begin commercial operations in 2027.[13] The Project will fulfill Empire Wind's contractual obligations to the State of New York for the delivery of billions of dollars in economic benefits and 810 megawatts of renewable energy, enough to power roughly 500,000 homes.

## III. Issuance of the Stop Work Order

One year into fully authorized construction, and as offshore work on the OCS was underway, on April 16, 2025, Defendant Secretary of the Interior Doug Burgum ordered BOEM to halt Project construction.[14] Dkt. No. 19 at 2. That same day,

---

[11] *Id*.

[12] *See* Empire Wind Final Environmental Impact Statement, Appendix A, https://www.boem.gov/renewable-energy/state-activities/empirewindfeisapparequiredpermits-0.

[13] *See* New York State Energy Research and Development Authority/Offshore Wind Projects, https://www.nyserda.ny.gov/All-Programs/Offshore-Wind/Focus-Areas/NY-Offshore-Wind-Projects (site last visited September 1, 2026).

[14] BOEM lacked authority to issue the Stop Work Order in the first instance and its issuance violated the law. The Stop Work Order was issued "without observance of procedure required by law" in violation of the APA, 5 U.S.C. § 706(2)(D), and violates each provision of OCSLA and BOEM's implementing regulations governing the halting of construction on a BOEM-issued lease. *See supra* 4-5. The

BOEM issued the Stop Work Order, which required Empire Wind to "halt all ongoing activities related to the Empire Wind Project on the [OCS] to allow time for it to address feedback it has received, including from the National Oceanic and Atmospheric Administration (NOAA), about the environmental analyses for that project," the same environmental analysis in which NOAA's NMFS participated and thereafter issued its own Project-related approval. Dkt. No. 19 at 1; *see* 88 Fed. Reg. 83146 (Nov. 28, 2023). On May 19, 2025, BOEM issued an amendment to the Stop Work Order lifting "the halt on activities during the ongoing review." Dkt. No. 5.

Construction of the Project immediately resumed, including installation of all monopile foundations in the seabed to support the wind turbine generator components and the offshore substation and subsea cables, which provide the electrical infrastructure necessary to deliver power to shore.

## ARGUMENT

### I. Legal Standard

#### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires dismissal if the Court lacks subject matter jurisdiction over a claim. The Court must first determine whether the subject matter jurisdiction challenge presents a facial or factual attack. *See Const.*

---

Stop Work Order is also arbitrary and capricious because it was issued without reasoned explanation and "abruptly departs from a position [BOEM] previously held without satisfactorily explaining its reason for doing so." *See Wis. Valley Improvement Co. v. FERC*, 236 F.3d 738, 748 (D.C. Cir. 2001).

*Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014) (detailing the distinctions). A facial attack asserts that the claim is insufficient on its face because the plaintiff did not plead sufficient information to invoke the subject matter jurisdiction of the court. *See id*. at 358. When analyzing a facial attack, the Court "must only consider the allegations of the complaint and documents referenced therein and attached thereto . . . . ." *Id*. (quoting *In re Schering Plough Corp.*, 678 F.3d 235, 243 (3d Cir. 2012)). A factual attack asserts that the facts of the case do not support the alleged basis for subject matter jurisdiction. *Id*. When considering a factual attack, the Court "may look beyond the pleadings to ascertain the facts" and "no presumptive truthfulness attaches to plaintiff's allegations . . . ." *Id*.; *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). The plaintiff bears the burden of establishing that subject matter jurisdiction exists. *See Mortensen*, 549 F.2d at 891.

**B. Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing

*Twombly*, 550 U.S. at 556). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Courts must accept all factual allegations as true but are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation. *See, e.g.*, *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007).

While the Court is generally limited to the allegations pled on the face of a complaint in considering a Rule 12(b)(6) motion to dismiss, it may properly look beyond the complaint to matters of public record, including records and letters of official actions or decisions of government agencies and administrative bodies, and documents referenced in the complaint or essential to a plaintiff's claim which are provided in a defendant's motion. *See, e.g.*, *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196–97 (3d Cir. 1993). The Court thus may consider judicially noticeable facts without converting a motion to dismiss into a motion for summary judgment. *See Korotki v. Levenson*, No. 1:20-CV-11050, 2021 WL 2650775, at *3 (D.N.J. June 28, 2021) (noting that it is a "well-established rule of law that on a motion to dismiss this Court may consider matters of public record").

## ARGUMENT

Plaintiffs assert that BOEM violated OCSLA by issuing the Lease to Empire Wind because, in their view, Empire Wind is not eligible to hold federal leases on the OCS and BOEM violated the APA by acting arbitrarily and capriciously when it

amended the April 16, 2025, Stop Work Order to once again allow the Project to proceed.[15] Dkt. No. 33. In their response to Empire Wind's pre-motion letter, Plaintiffs assert that the APA claim arises from alleged violations of the Secretary's obligations under OCSLA. Dkt. No. 53 at 2 ("Plaintiffs' claims of arbitrariness under the APA arise from the Secretary's failure to apply standards under OCSLA designed to avoid environmental and economic harm, as stated at 43 U.S.C. §§1344, 1345, 1346 and in BOEM regulations."). These claims suffer from multiple jurisdictional defects and are otherwise facially insufficient. Thus, Plaintiffs' Amended Complaint should be dismissed.

## I. Plaintiffs' OCSLA and APA Claims Must Be Dismissed Because Plaintiffs Failed To Comply With OCSLA's 60-Day Notice Requirement.

OCSLA requires a plaintiff to send written notice, under oath, to the Secretary of the Interior, any other appropriate federal officials, and any alleged violator *before* filing suit. 43 U.S.C. § 1349(a)(2)(A). Plaintiffs failed to do so, and their claims must be dismissed as a result. Indeed, another court recently dismissed claims against Empire Wind project approvals for precisely this reason. *Save Long Beach*

---

[15] The APA defines when a plaintiff can challenge a federal agency action and how a court should review such a challenge. *See Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 698 F. Supp. 3d 39, 58 (D.D.C. 2023) (holding that the APA "supplies a generic cause of action to bring claims under substantive laws found elsewhere") (citations and quotations omitted). The APA allows a reviewing court to "hold unlawful and set aside" final agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2); *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989).

*Island, v. U.S. Dep't of Com.,* No. 1:25-CV-02214 (CJN), 2026 WL 2150375, at **3-5 (D.D.C. July 27, 2026) ("*SLBI II*") (dismissing plaintiffs' OCSLA claim for failure to provide requisite 60-day notice).

It is well-settled that where a regulatory statute provides a comprehensive scheme for judicial review, those provisions are considered exclusive. *See, e.g., Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 15 (1981) ("we are compelled to conclude that Congress provided precisely the remedies it considered appropriate."; *Kreschollek v. S. Stevedoring Co.*, 78 F.3d 868, 870-71 (3d. Cir. 1996) ("[I]f there exists a special statutory review procedure, it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies." (citation omitted)). OCSLA is such a scheme, expressly providing that "all suits challenging actions or decisions allegedly in violation of, or seeking enforcement of, the provisions of this subchapter, or any regulation promulgated under this subchapter, or the terms of any permit or lease issued by the Secretary under this subchapter, shall be undertaken in accordance with the procedures described in this subsection." 43 U.S.C. § 1349(a)(6).

OCSLA provides that "no action may be commenced under [the statute] . . . prior to sixty days after the plaintiff has given notice of the alleged violation, in writing under oath, to the Secretary and any other appropriate Federal official . . .

*and to any alleged violator*." 43 U.S.C. § 1349(a)(2) (emphasis added). Failure to comply with the notice requirement mandates dismissal of a plaintiff's OCSLA claim for lack of jurisdiction. *See, e.g.*, *Duke Energy Field Servs. Assets, LLC v. FERC*, 150 F. Supp. 2d 150, 154-55 (D.D.C. 2001) (dismissing OCSLA claim because plaintiffs' purported notice failed to comply with OCSLA "under oath" notice requirements). Analogous provisions in other statutes produce the same result. *See, e.g.*, *Pub. Int. Rsch. Grp. v. Windall*, 51 F.3d 1179, 1189 n.15 (3d Cir. 1995) (describing analogous 60-day pre-filing notice in the Clean Water Act as a "jurisdictional prerequisite"); *see also Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 26 (1989) (holding that analogous pre-suit notification requirement is a "mandatory, not optional, condition precedent for suit.").

Here, Plaintiffs' OCSLA claim must be dismissed for lack of subject matter jurisdiction because it is facially insufficient. *Const. Party of Pa.*, 757 F.3d at 358. Plaintiffs have not alleged that they provided the requisite 60-day notice to either Empire Wind or any federal officials (and, indeed, Plaintiff did not provide such notice to Empire Wind). *See id*. OCSLA's 60-day notice requirement is strictly enforced by courts and bars Plaintiffs' OCSLA claim. This has been repeatedly recognized in cases challenging offshore wind decisions under OCSLA. *See SLBI II*, 2026 WL 2150375, at **3-5 (dismissing plaintiffs' OCSLA claim for fail to provide requisite 60-day notice); *Green Oceans v. U.S. Dep't of the Interior*, No. 1:24-CV-

141-RCL, 2025 WL 973540, at *13 (D.D.C. Apr. 1, 2025) (dismissing OCSLA claim against another offshore wind project on the basis that plaintiffs failed to provide the requisite 60-day notice); *Allco Renewable Energy Ltd. v. Haaland*, No. 1:21-CV-11171-IT, 2022 WL 2373914, at **1-2 (D. Mass. June 30, 2022) (dismissing OCSLA claim against another offshore wind project because plaintiffs failed to provide requisite 60-day notice). Indeed, this consistent precedent includes a case in which two of the plaintiffs in this matter – Long Island Commercial Fishing Association and Seafreeze Shoreside, Inc. – were parties in a case challenging Empire Wind's Lease under OCSLA. *See Fisheries Survival Fund v. Haaland*, 858 F. App'x 371, 373–74 (D.C. Cir. 2021) (upholding district court's denial of OCSLA claim relating to issuance of Empire Wind's Lease because plaintiffs failed to provide requisite 60-day notice).

Plaintiffs may argue that they submitted a 60-day notice to BOEM after their Complaint was filed, that an exception applies, and that the notice is not required in cases pleading APA violations. *See* Dkt. No. 53 at 1-2. Plaintiffs fail on all three grounds. First, submitting the notice after the Complaint was filed does not cure the jurisdictional defect. *See* 43 U.S.C. 1349(a)(2)(A) (providing that "no action may be commenced . . . *prior to* sixty days after the plaintiff has given notice") (emphasis added); *Green Oceans*, 2025 WL 973540, at *13 (rejecting plaintiffs' attempts to send a post-suit notice and file an amended complaint when the 60-day period

expired). Second, Plaintiffs' invocation of the OCSLA "exception" fares no better. The exception allows suit to proceed without waiting 60 days, but only "immediately *after notification* of the alleged violation in any case in which the alleged violation . . . would immediately affect a legal interest of the plaintiff." 43 U.S.C. § 1349(a)(3) (emphasis added). Furthermore, even if Plaintiffs provided pre-suit notice, which they did not, Plaintiffs could not evade the 60-day waiting period because they cannot establish that the alleged violation would "immediately affect" their legal interest. Offshore construction began in June 2024, but Plaintiff waited to file its lawsuit until June 2025, by which point substantial offshore construction activities had already occurred. Plaintiff was fully aware that construction of the Project was already underway when it filed its Complaint. *See* Complaint at ¶ 1 (noting that construction was stopped in April 2025). Plaintiff does not identify any action that would immediately affect its legal interest. *Fisheries Survival Fund v. Jewell*, No. 1:16-CV-2409 (TSC), 2018 WL 4705795, at *11 (D.D.C. Sep. 30, 2018) (dismissing OCSLA claim where plaintiff failed to show it would be immediately injured or lose a legal right by waiting 60 days to file suit challenging the issuance of Empire Wind's Lease).

Finally, courts have rejected attempts to evade OCSLA's notice requirement by framing an OCSLA claim as an APA claim. In other words, Plaintiffs cannot bring a freestanding APA count to evade the 60-day notice requirement where the

OCSLA citizen suit provision applies.[16] Under the APA, 5 U.S.C. § 702, any person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute," is entitled to judicial review as long as certain other conditions are satisfied. However, the APA independently provides for review only of "final agency action for which there *is no other adequate remedy in a court*,". 5 U.S.C. § 704 (emphasis added). "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988); *Bennett v. Spear*, 520 U.S. 154, 161-62 (1997) (looking to citizen suit provision first because "the APA by its terms independently authorizes review only when 'there is no other adequate remedy in a court'" (quoting 5 U.S.C. § 704)). *See also Defenders of Conewango Creek v. Echo Developers, LLC,* No. 1:06-cv-00242, 2007 WL 3023927, at *7 (W.D. Pa. Oct. 12, 2017) (where APA duplicated the remedy expressly conferred by the Endangered Species Act citizen suit, APA had no application.); *Allegheny Cnty. Sanit. Auth. v. EPA*, 732 F.2d 1167, 1176-77 (3d Cir. 1984) (APA review of alleged violation was inapplicable where the Clean Water

[16] Indeed, Plaintiffs seem to recognize as much. In their response to Empire Wind's pre-motion letter, Plaintiffs assert that the APA claim arises from alleged violations of the Secretary's obligations under OCSLA. Dkt. No. 53 at 2 ("Plaintiffs' claims of arbitrariness under the APA arise from the Secretary's failure to apply standards under OCSLA designed to avoid environmental and economic harm, as stated at 43 U.S.C. §§1344, 1345, 1346 and in BOEM regulations.").

Act citizen-suit provided an available remedy for alleged violation of Clean Water Act).

Here, the OCSLA citizen suit provision provides the exclusive remedy for alleged OCSLA violations. *See* 43 U.S.C. § 1349(a)(6) (all suits challenging actions or decisions allegedly in violation of OCSLA or its regulations must be undertaken in accordance with the procedures in OCSLA). In *SLBI II*, the court held that where a remedy is available under OCSLA, using the APA as the source of the cause of action is foreclosed. 2026 WL 2150375, at **3-5. There, the court dismissed the plaintiffs' OCSLA claims challenging the Empire Wind Project's approvals on the basis that the plaintiffs failed to provide the requisite 60-day notice, concluding that the plaintiffs could not frame their OCSLA claims as APA claims to evade OCSLA's notice requirement. *See id*. Similarly in *Green Oceans v. United States Department of the Interior*, the court found that similar plaintiff groups challenging approvals issued to another offshore wind project could not "shoehorn their OCSLA citizen-suit claim into the APA" in order to escape the notice requirement. 2025 WL 973540, at *13 (dismissing OCSLA claims for failure to comply with 60-day notice requirement).[17] The *Green Oceans* court relied on *Basel Action Network v. Maritime Administration*, 370 F. Supp. 2d 57, 77 (D.D.C. 2005), which held that, where

---

[17] Plaintiff Captain Alan Shinn is also a Plaintiff in *Green Oceans*, a challenge to the Revolution Wind Project.

"Congress has adopted a particular and specific balance of interests in requiring a 60-day non-adversarial period prior to suit," like OCSLA's 60-day notice provision, plaintiffs cannot "bypass the explicit requirements of the Act established by Congress through resort to . . . the APA." *Id.* (quotation omitted).

Plaintiffs' claims should be dismissed for failure to provide the requisite 60-day notice, divesting this Court of subject matter jurisdiction.[18]

## II. Plaintiffs' Challenge to the Issuance of the Empire Wind Lease Is Barred By The Six-Year Statute Of Limitations.

Plaintiffs' challenge BOEM's 2017 issuance of the Empire Wind Lease. Amended Complaint at ¶¶ 41-68. This claim is barred by the applicable six-year statute of limitations, divesting this Court of jurisdiction over Plaintiffs' claim that the issuance of the lease violated OCSLA.

The applicable statute of limitations, 28 U.S.C. § 2401(a), requires that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." In *Seafreeze Shoreside, Inc. v. United States Department of the Interior*, the District of

---

[18] To the extent the Court finds that Plaintiffs' failure to comply with OCSLA's 60-day notice requirement does not raise an issue of lack of subject matter jurisdiction, Plaintiffs' OCSLA claim should still be dismissed for failure to state a claim under Rule 12(b)(6). The Supreme Court has held that compliance with the pre-suit notice of this type is "mandatory". *Hallstrom*, 493 U.S. at 26. Plaintiffs' failure to meet the statute's notice requirement prior to commencing this action therefore dooms the claim as a matter of law.

Massachusetts found that an OCSLA claim brought by local groups opposed to an offshore wind project was time barred because it challenged a BOEM policy more than six years after the policy was first adopted. No. 22-CV-11091-IT, 2023 WL 6691015, at *19-20 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024) . The Court explained that the policy "was announced in 2010; a final rule pertaining to non-competitive leaves was issued in 2011; and BOEM published a notice concerning ongoing efforts to develop wind energy consistent with the 'Smart from the Start' Initiative in 2012. The two actions here were filed more than nine years later, in December 2021 and January 2022." *Id.*; *see also Commonwealth of Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health and Hum. Servs.,* 101 F.3d 939 (3d. Cir. 1996) (affirming district court ruling dismissing 1994 challenge to regulation finalized in 1987); *Oom Inc. v. United States*, No. 2:22-CV-2762, 2023 WL 5337150, at *5 (D.N.J. Aug. 18, 2023) (dismissing 2022 complaint challenging 2007 IRS rule under the APA).

Plaintiffs' OCSLA claim should be dismissed for the same reason. Here, BOEM issued the Lease more than eight years before Plaintiffs filed their Complaint in the instant proceeding, a fact that plainly bars Plaintiffs' claim challenging the issuance of the lease. *See* Ex. A, Empire Wind Lease, issued April 1, 2017. In response, Plaintiffs may assert that their claim regarding Lease issuance was not "ripe" until the BOEM approved Plaintiffs' COP. Dkt. No. 53 at 1. However,

Plaintiffs allege that BOEM violated OCSLA by issuing the Lease to a "foreign government or instrumentality." Amended Complaint at ¶ 41. Accepting Plaintiffs' allegations as true, BOEM's violation would have first occurred when the Lease became effective on April 1, 2017. Plaintiffs had more than eight years to challenge BOEM's issuance of the Lease before filing this action and failed to do so.

Moreover, Plaintiffs cannot retroactively argue that their claim was not ripe in the six years following BOEM's issuance of the Lease. *See Commonwealth of Pa. Dep't of Pub. Welfare*, 101 F.3d at 945. In effect, Plaintiffs ask this Court "to conduct a hypothetical retrospective ripeness analysis" to determine whether their OCSLA claim could have been asserted. *Id.* (emphasis omitted). As the Third Circuit has explained, "[a]s a general matter, courts are not well suited to decide hypothetical questions about what they might have done in the past . . . . If courts were to 'routinely conduct retrospective ripeness analyses where a late petitioner offers no compelling justification for not having filed his claim in a timely manner, [it] . . . would wreak havoc with the congressional intention that repose be brought to final agency action.'" *Id.* (quoting *Eagle–Picher Indus., Inc. v. EPA*, 759 F.2d 905, 914 (D.C. Cir. 1985)).

Furthermore, Plaintiffs' own actions also undercut their argument. In 2016, shortly after Empire Wind won the Lease in a BOEM auction, current Plaintiffs,

LICFA, Fishermen's Dock Cooperative,[19] and Seafreeze Shoreside, Inc. challenged the issuance of Empire Wind's Lease for different reasons, in a different court.[20] *See Fisheries Survival Fund*, 2018 WL 4705795, at *3. In that case, in support of their standing and the ripeness of their claims, Plaintiffs argued that they were harmed by environmental impacts resulting from BOEM's issuance of the Lease. *Id*. at **4-7. The *Fisheries Survival Fund* court eventually found that the plaintiffs' NEPA claim was not ripe because construction had yet to be approved. *Id*. at **6-10. But the plaintiffs, including LICFA, Fishermen's Dock Cooperative, and Seafreeze Shoreside, Inc., could have argued then that they were harmed by an alleged "agency or instrumentality of a federal government" holding the Lease, and nothing in that court's opinion on ripeness of the NEPA claim would have precluded this argument. In fact, the Court adjudicated the OCSLA claims brought by the plaintiffs in *Fisheries Survival Fund* but dismissed for failure to send the requisite 60-day notice. *Id*. at **10-11.

For the reasons explained above, Plaintiffs' OCSLA claim should be dismissed because it is barred by the six-year statute of limitations.

---

[19] Plaintiff Fishermen's Dock Cooperative was in the *Fisheries Survival Fund* case as "Fishermen's Dock Co-Operative of Point Pleasant." 2018 WL 4705795 at *1, n.1.

[20] As explained herein, the Lease was initially issued to Statoil Offshore Wind LLC, later renamed to Equinor Offshore Wind LLC.

## III. Plaintiffs' OCSLA Claim Should Be Dismissed For Failure To State A Claim.

Plaintiffs' claim that the lease issuance violated OCSLA because BOEM issued the Project's lease to a "foreign government or instrumentality" also fails to state a claim for relief as a matter of law. Amended Complaint at ¶¶ 41, 67-68. *See Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024) (citing *Ashcroft*, 556 U.S. at 678). The law allows offshore leases to be held by corporations organized under the laws of the United States, of which Empire Leaseholder LLC is one.

Plaintiffs allege that Empire Leaseholder LLC is ultimately owned by Equinor ASA, which is in turn majority-owned by the Kingdom of Norway, and that foreign countries are not permitted to hold leases under OCSLA. Dkt. No. 33 at ¶¶ 46-68. But even accepting as true Plaintiffs' assertions regarding the ownership of Empire Leaseholder LLC, Count 1 fails to state a claim for relief that is plausible on its face. OCSLA and BOEM's implementing regulations are clear as to what type of entities may hold offshore leases. OCSLA defines a "person" subject to the statute as including "private, public, or municipal" corporations, 43 U.S.C. § 1331(d), and BOEM's regulations provide that offshore leases may be held by "[p]rivate, public, or municipal corporations organized under the laws of any State of the United States . . . ." 30 C.F.R. § 585.107(a)(3); *see* 30 C.F.R. § 585.108(d).

The entity holding the Lease, Empire Leaseholder LLC, is a private limited liability company organized under the laws of the State of Delaware. Attached

hereto as Exhibit B is Empire Leaseholder LLC's Amended and Restated Certificate of Formation issued by the Delaware Secretary of State's office. *See* Ex. B, Declaration of David J. Ball in Support of Motion to Dismiss; Attachment 1 to Ball Declaration, Amended and Restated Certificate of Formation of Empire Leaseholder LLC. The Court may properly look beyond Plaintiffs' Amended Complaint to this Certificate of Formation, which is a matter of public record and a record of an official action of a government agency. *See, e.g., Pension Ben. Guar. Corp*., 998 F.2d at 1196–97; *see also Korotki*, 2021 WL 2650775, at *3 (noting that it is a "well-established rule of law that on a motion to dismiss this Court may consider matters of public record"). The very existence of Empire Leaseholder LLC's Delaware Certificate of Formation establishes that the entity holding the Lease is a public company established under the laws of a U.S. state, making it qualified to hold the Lease under OCSLA and BOEM's implementing regulations. 30 C.F.R. § 585.107(a)(3); 43 U.S.C. § 1331(d). Plaintiffs are obligated to provide the grounds of their entitlement to relief, which must be based on "more than labels and conclusions . . . ." *Twombly,* 550 U.S. at 555. They have not done so here.

**<u>CONCLUSION</u>**

For the foregoing reasons, Empire Wind respectfully requests that this Court grant Empire Wind's Motion and dismiss Plaintiffs' Complaint.

Date: September 3, 2026

Respectfully submitted,

*/s/ David J. Ball*
David J. Ball (NJ Bar No. 036732004)
**Bracewell LLP**
31 West 52nd Street, 19th Floor
New York, NY 10019
Tel: (212) 508-6133
Fax: (800) 404-3970
Email: david.ball@bracewell.com

Tyler S. Johnson
**Bracewell LLP**
701 Fifth Avenue, Suite 6850
Seattle, Washington 98104
Tel: (206) 204-6211
Fax: (800) 404-3970
Email: ty.johnson@bracewell.com

Ann D. Navaro
Taylor M. Stuart
**Bracewell LLP**
2001 M Street NW, Suite 900
Washington, DC 20036
Tel: (202) 828-5800
Fax: (800) 404-3970
Email: ann.navaro@bracewell.com
taylor.stuart@bracewell.com

*Counsel for Defendants Empire Offshore Wind LLC, Empire Leaseholder LLC, and Empire Wind 2 LLC*